UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

WEST PACE, LLC,

    Debtor.
_____

MARSHALL GLADE, AS LIQUIDATING
TRUSTEE OF WEST PACE, LLC,

    Plaintiff,

v.

THOMAS HAYLEY; HAYLEY FAMILY
PARTNERSHIP, LTD.; REDD FAMILY
PARTNERSHIP, LLLP; HAYRAY, L.L.C.;
HOME YARD & GARDEN, INC.;
LAKE MARTIN, INC.; and EAGLE
MANAGEMENT, L.L.C.,

    Defendants.

Case No. 20-80067-CLH
Chapter 11

Adv. Proc. No. 22-08001-CLH

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

This matter came before the Court on the Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Adv. Pro. Doc. No. 19][1] (the "Motion") filed by Thomas Hayley ("Hayley"), Hayley Family Partnership, Ltd. ("Hayley Family"), Redd Family Partnership, LLLP ("Redd Family"), HayRay, L.L.C. ("HayRay"), Home Yard & Garden, Inc. ("Home"), Lake Martin, Inc. ("Lake Martin"), and Eagle Management, L.L.C. ("Eagle," and together with Hayley, Hayley Family, Redd Family, HayRay, Home, and Lake Martin, the "Defendants"). For the reasons set forth below, the Motion is DENIED.

---

[1] "Adv. Pro. Doc. No." refers to the docket number for a filing in the instant adversary proceeding, Adversary Proceeding Number 22-08001.

1

## I. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference of Bankruptcy Matters entered by the United States District Court for the Middle District of Alabama on April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1409.

## II. PROCEDURAL HISTORY

On January 16, 2020, West Pace, LLC (the "Debtor") filed the underlying Chapter 11 case [Main Case Doc. No. 1].[2] On October 8, 2020, U.S. Bank, National Association, filed the Combined Disclosure Statement and Plan of Liquidation of U.S. Bank National Association, as Indenture Trustee [Main Case Doc. No. 161] (as supplemented, the "Plan"). On November 20, 2020, the Court entered its Order Confirming U.S. Bank National Association, as Indenture Trustee's Plan of Liquidation and Granting Final Approval of Disclosure Statement [Main Case Doc. No. 221] (the "Confirmation Order"). Pursuant to the confirmed Plan, Marshall Glade (the "Plaintiff") was appointed Liquidating Trustee of the Debtor.

On January 15, 2022, the Plaintiff filed a Complaint [Adv. Pro. Doc. No. 1], and on March 9, 2022, the Plaintiff filed an Amended Complaint [Adv. Pro. Doc. No. 14]. The Amended Complaint contains five counts: Count I: Breach of Fiduciary Duty of Care; Count II: Breach of Fiduciary Duty of Loyalty; Count III: Fraudulent Transfers Pursuant to ALA. CODE § 8-9A, et seq. and 11 U.S.C. § 544; Count IV: Voidable Transfers Pursuant to ALA. CODE § 8-9B-1, et seq. and 11 U.S.C. § 544; and Count V: Insider Preferential Transfers Pursuant to ALA. CODE § 8-9BA-6, et seq. and 11 U.S.C. § 544. [Adv. Pro. Doc. No. 14].

---

[2] "Main Case Doc. No." refers to the docket number for a filing in the underlying Chapter 11 case filed by West Pace, LLC, Case Number 20-80067.

In response to the Amended Complaint, the Defendants filed the Motion on March 23, 2022. The Plaintiff filed his Response in Opposition to Defendant's Motion to Dismiss Amended Complaint [Adv. Pro. Doc. No. 24] on May 18, 2022. After a status hearing on September 8, 2022, the Court entered an Order: a) permitting the Plaintiff to file a supplemental response to the Motion; b) permitting the Defendants to file a reply; and c) notifying the parties that if they sought oral argument on the Motion, they should indicate as such in their filings. [Adv. Pro. Doc. No. 30].

The Plaintiff timely filed his Amended Response in Opposition to Defendants' Motion to Dismiss Amended Complaint on October 11, 2022 [Adv. Pro. Doc. No. 31]. The Defendants timely filed their Reply to Plaintiff's Amended Response in Opposition to Defendants' Motion to Dismiss Amended Complaint on October 25, 2022 [Adv. Pro. Doc. No. 32]. None of the parties requested oral argument, and the Court took the matter under submission.

### III.   ANALYSIS AND CONCLUSIONS OF LAW

The Motion is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated into Rule 7012 of the Federal Rules of Bankruptcy Procedure. FED. R. BANK. P. 7012. Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court does not consider the merits of a case. Instead, all well-pleaded factual allegations in a complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d. 1027, 1037 (11th Cir. 2008).

While a complaint need not provide detailed factual allegations to survive a motion to dismiss under Rule 12(b)(6), a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). More

3

specifically, a complaint should be dismissed under Rule 12(b)(6) where it appears that the alleged facts fail to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, to survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555) (citation omitted).

At the Rule 12(b)(6) stage, the court primarily considers – but is not limited to – the allegations contained within the four corners of the complaint. *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007). A court may take judicial notice of court filings when considering a motion to dismiss. *Kramer v. First NLC Financial Services, LLC (In re First NLC Financial Services, LLC)*, 410 B.R. 726, 729 (Bankr. S.D. Fla. 2008).

A. Analysis Applicable to All Counts

1. Preservation of Claims and Causes of Action as to All Defendants

The Defendants assert that the Plan and Confirmation Order failed to preserve the claims and causes of action asserted in the Amended Complaint. The doctrine of *res judicata* precludes parties from relitigating issues that could have been raised in a previous action, and a confirmation order constitutes a judgment that can be given a preclusive effect. *See In re Optical Technologies, Inc.*, 425 F.3d 1294, 1300-01 (11th Cir. 2005). However, § 1123(b)(3) of the Bankruptcy Code "codifies a long-recognized power of preservation of claims, which essentially nullifies the preclusive effect of a confirmation order for claims that are reserved in a Chapter 11 plan." *Samsung Electronics Co., Ltd. v. All American Semiconductor Inc.*, Case No. 09-23203-CIV-GOLD, 2010 WL 11507198, at *4 (S.D. Fla. Apr. 15, 2010); *aff'd sub nom. Samsung Elecs. Co.,*

*Ltd. v. AASI Creditor Liquidating Trust (In re All American Semiconductor, Inc.)*, 417 Fed. Appx. 891 (11th Cir. 2011).

Section 1123(b)(3) "does not require that a plan specifically identify potential defendants against which causes of action are retained or that it describe specific claims." *Kaye v. A.R.E. Distrib. & Alpine Records, LLC (In re Value Music Concepts, Inc.),* 329 B.R. 111, 119-20 (Bankr. N.D. Ga. 2005). Rather, the plan documents must have "sufficiently identified the types or categories of retained causes of action" and must have given "adequate notice of the reservation to creditors." *Id.* at 120. The unique facts of each case will impact the sufficiency of the disclosure of the defendants and causes of action. *See All American Semiconductor Inc.*, 2010 WL 11507198 at *6.³

The Court finds that the Plan – while not specifically linking each of the Defendants with every potential theory on which the Plaintiff may seek recovery – is nonetheless specific and inclusive enough to prevent any *res judicata* or estoppel effect and to preserve the claims and causes of action in the Amended Complaint under § 1123(b)(3). The operative language of the Plan provides:

> EXCEPT AS OTHERWISE SET FORTH IN THIS PLAN, ALL CAUSES OF ACTION OF THE DEBTOR **INCLUDING** AVOIDANCE ACTIONS AND GENERAL LITIGATION CLAIMS, SHALL BE PRESERVED AND SURVIVE CONFIRMATION OF THIS PLAN AND THE COMMENCEMENT AND PROSECUTION OF SUCH CAUSES OF ACTION BY THE LIQUIDATION TRUSTEE OR OTHWERWISE SHALL NOT BE BARRED OR LIMITED BY RES JUDICATA OR ANY ESTOPPEL, WHETHER JUDICIAL, EQUITABLE, OR OTHERWISE. THE INDENTURE TRUSTEE SPECIFICALLY INTENDS TO PRESERVE, **WITHOUT LIMITATION**, ALL CLAIMS AGAINST HAYLEY, REDD FAMILY PARTNERSHIP, LLP, THE DISTRICTS, AND THE MEMBERS OF THE BOARDS OF DIRECTORS OF THE DISTRICTS.

---

³ For example, in *Laddin v. Belden (In re Verilink Corp.)*, 408 B.R. 420 (Bankr. N.D. Ala. 2009), the unique facts of the case dictated that disclosure of the potential defendant – a law firm that had been active in transactions that may have led to the debtor's need to file the underlying bankruptcy case – was necessary to preserve causes of action against that law firm under the plan.

(emphasis added).

With respect to Hayley, the second paragraph of the Plan states: "The Plan contemplates the maximization of the value of the Debtor's assets through an auction of real estate owned by the Debtor and the prosecution of litigation claims against, among others, the Debtor's principal Thomas M. Hayley." Section 2.1 of the Plan asserts that despite Hayley's testimony that he has been marketing the property for sale since the Debtor acquired the property in the mid-2000s, the property is not currently listed for sale. Section 2.2 of the Plan asserts that Special Assessments have not been paid to the Debtor's creditors "due to the failure of the Improvement District – the board members of which are Hayley nominees – to adopt annual budgets and collect from the Debtor annual installments of Special Assessments." The parties extensively litigated matters in the bankruptcy case, including a claim objection and a motion for relief from stay, as referenced in Section 2.4 of the Plan. Collectively, the Plan provisions are sufficient to preserve the claims against Hayley as asserted in Counts I and II of the Amended Complaint. *See In re Value Music Concepts, Inc.,* 329 B.R. at 119-20; *see also All American Semiconductor Inc.*, 2010 WL 11507198 at *6.

With respect to the other Defendants, Counts III, IV, and V seek to recover alleged fraudulent, avoidable, and insider preferential transfers, which fall under the Plan's definition of "Avoidance Actions." The Defendants have cited no cases – and the Court is unaware of any binding precedent – requiring a plan proponent to identify in the plan every potential defendant in every potential avoidance action. Such a result would run contrary to the purposes of §1123(b)(3). If confirmation must await a final decision regarding all possible avoidance complaints, it would "'either inordinately delay confirmation, with all the attendant expense, or result in a windfall in favor of those who received'" avoidable transfers. *Guttman v. Martin (In re Railworks Corp.)*,

325 B.R. 709, 717 (Bankr. D. Md. 2005) (quoting *In re Amarex*, 74 B.R. 378, 380 (Bankr. W.D. Okla. 1987), *aff'd sub nom. Amarex v. Marathon Oil Co.*, 88 B.R. 362 (W.D. Okla. 1988)).

Accordingly, the Court concludes that the Plan sufficiently preserves the claims and causes of action asserted in the Amended Complaint and denies the Motion to the extent it seeks dismissal based on insufficient preservation of claims.

2. **Preservation of Claims as to Redd Family**

The Defendants assert that the Plan and Confirmation Order failed to preserve the claims and causes of action against Redd Family because: a) Redd Family did not receive notice of the deadline for filing objections to the approval of the disclosure statement and confirmation of the Plan under Rule 2002(b) of the Federal Rules of Bankruptcy Procedure; and b) Redd Family did not receive a copy of the Plan and notice of the hearing on confirmation of the Plan under Rule 3017(d) of the Federal Rules of Bankruptcy Procedure. These assertions directly track the assertions in the Motion to Declare Order on Confirmation Void Ab Initio as to Redd Family Partnership, LLLP (the "Redd Family Motion") [Main Case Doc. No. 256]. In connection with discovery disputes related to the Redd Family Motion, the Court entered an order permitting limited discovery, ruling that the issue of notice for purposes of due process would turn on the specific facts surrounding Redd Family's authorization of, and involvement in, the Debtor's bankruptcy case. [Main Case Doc. No. 279]. Redd Family subsequently withdrew the Redd Family Motion. [Main Case Doc. No. 299].

Given that Redd Family withdrew the Redd Family Motion, the Court assumes that Redd Family has abandoned its argument that notice was defective with respect to the Plan and that it no longer seeks dismissal of the Amended Complaint based on lack of notice under Rules 2022(b) and 3017(d) of the Federal Rules of Bankruptcy Procedure. To the extent, however, that Redd

Family has not abandoned these arguments with respect to the Motion, the Court finds that the Amended Complaint sufficiently states a claim against Redd Family and that any defenses related to notice would require the development of facts through discovery. Accordingly, the Motion is denied with respect to any argument that the retention of claims in the Plan was insufficient as to Redd Family due to lack of notice.

B.  Analysis Applicable to Counts I and II

1.  Statute of Limitations

In the Motion, the Defendants assert that the Plaintiff's claims for breach of the fiduciary duty of care and the breach of the fiduciary duty of loyalty are almost entirely outside the statute of limitations. The Defendants correctly state that under ALA. CODE § 6-2-38(l), the statute of limitations on a cause of action for breach of fiduciary duty is two years. However, the statute of limitations on a cause of action may be tolled under ALA. CODE § 6-2-3 if the existence of a cause of action has been fraudulently concealed. *See DGB, LLC v. Hinds*, 55 So.3d 218, 224 (Ala. 2010) (citing *Holdbrooks v. Central Bank of Alabama, N.A.*, 435 So.2d 1250, 1251 (Ala. 1983)). In essence, "'[a] party cannot profit by his own wrong in concealing a cause of action against himself until barred by limitation. The statute of limitations cannot be converted into an instrument of fraud.'" *Hinds*, 55 So.3d at 224 (quoting *Hudson v. Moore*, 194 So. 147, 149 (Ala. 1940)).

The Plaintiff alleges in Paragraphs 53 and 58 of the Amended Complaint that the doctrine of adverse domination tolls the applicable statute of limitations for the claims asserted in Counts I and II, respectively. The Alabama Supreme Court has recognized the concept of adverse domination, stating that "a corporate director is a quasi trustee, and as long as the fiduciary relationship between him and the corporation exists, the statute of limitations will not run against a claim based on his wrongdoing." *Jefferson County Truck Growers Ass'n v. Tanner*, 341 So.2d

485, 487-88 (Ala. 1977). This concept closely tracks the reasoning of the Alabama Supreme Court in the *Hinds* case with respect to the application of ALA. CODE § 6-2-3.

The Defendants argue that their wrongdoing, if any, was open and obvious for all to see, including: the transfers listed on Exhibit A to the Amended Complaint; the failure to construct proper infrastructure for a commercial development; the improper marketing of the Debtor's real estate; and the failure to build certain structures in conjunction with an agreement with one of the Debtor's creditors. However, taking the allegations in the Amended Complaint as true – and applying the principles set forth by the Alabama Supreme Court as cited above – the Court concludes that dismissal of the Amended Complaint is not appropriate with respect to the Plaintiff's claims asserting breach of fiduciary duty. Without limitation, the Plaintiff has alleged that adverse domination tolls the applicable statute of limitations. The timeframe in which the Plaintiff could have or should have discovered the acts or omissions of the Defendants is fact intensive. Accordingly, the Court denies the Motion with respect to the Defendants' statute of limitations arguments regarding Counts I and II.

2. **Lack of Specificity Regarding Payments to Insiders**

The Defendants assert that the Plaintiff failed to sufficiently plead how the transfers listed in the Amended Complaint constitute a breach of fiduciary duty, arguing that the Plaintiff failed to allege how the Defendants were affiliated with the Debtor and how the transfers in question were improper.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Plaintiff alleges in Paragraph 15 of the Amended Complaint that Hayley was the managing member of the Debtor and alleges in Paragraph 39 that Hayley owns,

9

Case 22-08001    Doc 49    Filed 01/27/23    Entered 01/10/24 11:52:06    Desc Main
Document      Page 9 of 16

controls, or is closely affiliated with Hayley Family, HayRay, Home, Lake Martin, Eagle, and Redd Family. The Plaintiff alleges in Paragraph 40 that Redd Family and Eagle were the two members of the Debtor. The Plaintiff also alleges in Paragraph 14 that the Debtor was never adequately capitalized and that the value of its liabilities exceeded the value of its assets at all relevant times. For purposes of the Motion, the Court may draw the reasonable inference that if Hayley transferred substantial assets of the Debtor to the Defendants while the Debtor was insolvent, Hayley may be liable for breach of the fiduciary duty of care and the fiduciary duty of loyalty. *See Id*. Accordingly, the Motion is denied with respect to the Defendants' argument that the Plaintiff failed to plead with sufficient specificity how the alleged transfers constituted a breach of fiduciary duty.

### 3. Immunity Under ALA. CODE § 11-99A-7

The Defendants argue that Hayley's liability for the failure to construct infrastructure would have arisen in his capacity as an officer or agent of the West Pace Village Cooperative District and the West Pace Village Improvement District (together, the "Districts"), affording him immunity under ALA. CODE § 11-99A-7. The Plaintiff argues that ALA. CODE § 11-99A-7 does not apply to the Amended Complaint because the Plaintiff has not alleged that Hayley is a district, a district board member, an officer of a district, or an agent of a district. While the Court agrees with the Plaintiff that the Amended Complaint does not allege facts that would give rise to a potential claim of immunity under ALA. CODE § 11-99A-7, it is also clear from Alabama Supreme Court precedent that the statute does not insulate Hayley from liability in any event. *See Alliant Bank v. Four Star Investments, Inc.*, 244 So.3d 896, 909-910 (Ala. 2017).

10

Case 22-08001    Doc 49    Filed 01/27/23    Entered 01/10/24 11:52:06    Desc Main
Document    Page 10 of 16

In *Four Star Investments*, a judgment creditor sued board members of an improvement district for, among other things, negligence and breach of fiduciary duty. The board members sought immunity under ALA. CODE § 11-99A-7. The Alabama Supreme Court held:

> Section 11–99A–7 is clear that the legislature intended an improvement district and its board members to have "the same immunity from liability as a municipality and its officers," and § 11–47–190 provides that a municipality can be sued for the negligent acts of its agents and that, if a municipality is the subject of a lawsuit as a result of the negligence of an agent, "then such person ... shall be liable to an action on the same account by the party so injured." *See, e.g., Morrow v. Caldwell*, 153 So.3d 764 (Ala. 2014) (recognizing that under § 11–47–190 a municipality can be sued based upon the negligence of its agent, while the agent can be sued in his or her individual capacity for both negligent and intentional acts).

244 So.3d at 909-10. The Alabama Supreme Court concluded:

> Reading these two statutes together, the sentence in § 11–99A–7 indicating that no claim can be pursued against a director of an improvement district "for or on account of the negligence of a district or director or its or his or her agents, servants, or employees" must operate only to bar a negligence claim from being asserted against a director based upon the negligence of some other party—not the director's own negligence. This is consistent with how immunity is applied to cases involving municipal employees. *See, e.g., Newton v. Town of Columbia,* 695 So.2d 1213, 1218 (Ala. Civ. App. 1997) ("[A] municipality's chief executive is not vicariously liable for the misconduct of his or her subordinates."). In this case, the Board members are being sued based on their own alleged wrongdoing, not the actions of each other or some other agents. Accordingly, § 11–99A–7 does not bar the negligence and breach-of-fiduciary duty claims asserted by Aliant against the Board members.

244 So.3d at 910. The Court agrees with the reasoning of the Alabama Supreme Court. Accordingly, the Motion is denied with respect to Hayley's claims of immunity under ALA. CODE § 11–99A–7.

11

C.  **Analysis Applicable to Counts III and IV**

In the Motion, the Defendants assert that the Plaintiff's fraudulent transfer claims have not been alleged with sufficient specificity, or, in the alternative, are largely outside the statute of limitations. The Defendants refer to both Count III and Count IV and the Alabama Code provisions underlying them.[4] The Court assumes for purposes of the Motion that the Defendants intended each of their arguments to apply to both counts.

1. **Lack of Specificity**

The Defendants assert that the Plaintiff failed to plead with a sufficient factual basis that the transfers were made with actual intent to hinder, delay, or defraud the Debtor's creditors, referring specifically to Paragraphs 63 and 69 of the Amended Complaint. In a related footnote, the Defendants argue that the Plaintiff merely has recited the elements of a potential fraudulent transfer without any supporting allegations, including any allegations regarding how or why the alleged transferees are affiliates.

Because direct proof of actual intent to hinder, delay, or defraud creditors may be difficult to obtain, "courts may infer fraudulent conduct from the circumstantial evidence and the surrounding circumstances of the transactions," including "the existence of certain badges of fraud." *Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1271 (11th Cir. 1998). Badges of fraud are listed nearly identically in ALA. CODE §§ 8-9A-4(b) and 8-9B-5(b); including: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was concealed or not disclosed; (4) before the transfer was made

---

[4] Count III addresses alleged transfers occurring before January 1, 2019, and Count IV addresses alleged transfers occurring thereafter. The Uniform Fraudulent Transfer Act was enacted by Alabama in 1989 as ALA. CODE §§ 8-9A-1 through 8-9A-12. The Uniform Voidable Transfer Act was enacted by Alabama in 2018 as ALA. CODE §§ 8-9B-1 through 8-9B-16 and was intended to replace Alabama's version of the Uniform Fraudulent Transfer Act for any transfers occurring after January 1, 2019. For purposes of the parties' arguments regarding the statute of limitations, and to the extent necessary, the analysis is identical.

12

the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Apart from Paragraphs 63 and 69, the Plaintiff included additional allegations in the "Factual Background" section of the Amended Complaint that, if taken as true, would establish certain badges of fraud. Without limitation, the Plaintiff alleges in Paragraph 14 that the Debtor was never adequately capitalized and that the value of its liabilities exceeded the value of its assets at all relevant times. As set forth in Section III.B.2 above, the Plaintiff alleges in Paragraph 15 that Hayley was the managing member of the Debtor and in Paragraph 39 that Hayley owns, controls, or is closely affiliated with Hayley Family, HayRay, Home, Lake Martin, Eagle, and Redd Family. The Plaintiff alleges in Paragraph 40 that Redd Family and Eagle were the two members of the Debtor. In Paragraph 36, the Plaintiffs refers to the lawsuit filed by the Alabama Department of Conservation and Natural Resources against the Debtor. In Paragraph 41, the Plaintiff then identifies the dividends and transfers made to the Defendants and refers to the more detailed breakdown of the transactions in Exhibit A to the Amended Complaint.

Based on the guidance provided by the Eleventh Circuit in *XYZ Options, Inc.* and the badges of fraud listed in ALA. CODE §§ 8-9A-4(b) and 8-9B-5(b), the Court finds that the Plaintiff has pled sufficient facts to withstand a motion to dismiss under Rule 12(b)(6) with respect to transfers made with actual intent to hinder, delay, or defraud the Debtor's creditors. Accordingly,

13

the Motion is denied with respect to the Defendant's arguments regarding lack of specificity under Counts III and IV.

### 2. *Nullum Tempus*

The Plaintiff asserts that under the doctrine of *nullum tempus*, he stands in the shoes of the State of Alabama and is not subject to the statute of limitations for fraudulent transfers.[5] Pursuant to § 544(b)(1) of the Bankruptcy Code, the Trustee may step into the shoes of a creditor and "may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." Under the doctrine of *nullum tempus*, statutes of limitation are construed narrowly against the government and sometimes will not run at all against the government. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 96 (2006). Alabama courts have recognized the doctrine of *nullum tempus* with respect to the State and its departments. *See Board of School Comm. v. Architects Group*, 752 So. 2d 489, 491 (Ala. 1999). Based on these principles, the Trustee – standing in the shoes of the Alabama Department of Conservation and Natural Resources pursuant to § 544(b)(1) of the Bankruptcy Code – asserts that he can look back beyond the statutes of limitations set forth in ALA. CODE §§ 8-9A-9 and 8-9B-10, as applicable.

There exists, however, an important limitation on the doctrine of *nullum tempus*, as noted by the Alabama Supreme Court: "[i]t is a cardinal rule that the statute of limitations, **unless so expressed**, does not run against the state; but it is equally a cardinal rule that they do run against the state, **if so expressed**." *Cox v. Board of Trustees of University of Alabama*, 49 So. 814, 820 (Ala. 1909) (emphasis added). The Court finds persuasive the reasoning in *In re Maxus Energy*

---

[5] For purposes of this analysis, the Court assumes that the Plaintiff asserts this argument with respect to Alabama's codification of the Uniform Voidable Transfer Act, given its citation to ALA. CODE § 8-9B-10, and Alabama's codification of the Uniform Fraudulent Transfer Act, as necessary.

*Corporation*, where the United States Bankruptcy Court for the District of Delaware considered, among many other issues, the interplay of the Bankruptcy Code, state fraudulent transfer statutes, and the doctrine of *nullum tempus*. *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467 (Bankr. D. Del. 2022). In *Maxus*, the court addressed whether a liquidating trust, when standing in the shoes of the State of Ohio and the State of Wisconsin as creditors in the underlying bankruptcy case, could utilize the doctrine of *nullum tempus* to recover alleged fraudulent transfers. 641 B.R. at 546-547. The court noted that the definition of "creditor" under each State's codification of the Uniform Fraudulent Transfer Act included a government or governmental subdivision or agency. *Id.* This inclusion made it clear that the government was not exempt from the time limitations of the applicable fraudulent transfer statutes. *Id.* at 546-548.

Based on the guidance of the Alabama Supreme Court in the *Cox* case and consistent with the reasoning in the *Maxus* case, the Court concludes that the Plaintiff cannot employ the doctrine of *nullum tempus* to seek the recovery of transfers outside the applicable statutes of limitations set forth in A<span>LA</span>. C<span>ODE</span> §§ 8-9A-9 and 8-9B-10, as applicable. Like the Ohio and Wisconsin statutes referenced in *Maxus*, Alabama's Uniform Fraudulent Transfer Act and Uniform Voidable Transfer Act define: a) "claim" as a right to payment; b) "creditor" as a person who has a claim; and c) "person" as "[a]n individual, partnership, corporation, association, organization, **government, or governmental subdivision or agency**, business trust, estate, trust, or any other legal or commercial entity." *See* A<span>LA</span>. C<span>ODE</span> § 8-9A-1; A<span>LA</span>. C<span>ODE</span> § 8-9B-2 (emphasis added). The doctrine of *nullum tempus* applies only when a statute of limitations does not expressly apply to the government. *See Cox*, 49 So. at 820. Here, governments and their subdivisions and agencies are expressly included among the creditors subject to the applicable statutes of limitations. *See*

ALA. CODE § 8-9A-1; ALA. CODE § 8-9B-2. Accordingly, the Plaintiff's assertions with respect to the doctrine of *nullum tempus* fail.

### 3. Concealment

Notwithstanding the inapplicability of the doctrine of *nullum tempus* – and as analyzed in Section III.B.1 above – the statute of limitations on a cause of action may be tolled under ALA. CODE § 6-2-3 if the existence of a cause of action has been fraudulently concealed. *See Hinds*, 55 So.3d at 224. As noted above, "'[t]he statute of limitations cannot be converted into an instrument of fraud.'" *Hinds*, 55 So.3d at 224 (quoting *Hudson v. Moore*, 194 So. 147, 149 (Ala. 1940)). The timeframe in which the Plaintiff could have or should have discovered the transfers listed in the Amended Complaint is highly fact intensive. Accordingly, the Court denies the Motion with respect to Counts III and IV regarding arguments on the expiration of the statute of limitations.

### D. Analysis Applicable to Count V

In the Motion, the Defendants do not appear to assert specific defenses with respect to Count V. Accordingly, the Motion is denied with respect to Count V of the Amended Complaint.

## IV. CONCLUSION

For the reasons stated above, it is ORDERED that Defendant's Motion is DENIED.

Done this 27th day of January, 2023.

Christopher L. Hawkins
United States Bankruptcy Judge

c: John D. Elrod, Attorney for Plaintiff
Clark Hammond, Attorney for Defendants
Gary W. Lee, Attorney for Defendants
Joel Connally, Attorney for Defendants